UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:11 CR 246 CDP |
| ) | |
| JAMES SMITH, ET AL., ) | |
| ) | |
| Defendants. ) | |

**SENTENCING MEMORANDUM**

COMES NOW, Defendant James C. Smith, and by and through his attorney, files this Sentencing Memorandum.  This memorandum will, address, in order, first, the reasons Mr. Smith's Objections to the Pre-Sentence Report should be sustained and, second, the §3553 (a) factors supporting a downward variance.

**INTRODUCTION**

Defendant James Smith was charged, and convicted, under Count I of the Indictment. Specifically, Mr. Smith was convicted of conspiracy to participate, directly or indirectly, in the affairs of an enterprise (the Wheels of Soul Motorcycle Club) through a pattern of racketeering activity in violation of 18 U.S.C. 1962(d).  The Government alleged that James Smith agreed to participate in the enterprise with the knowledge and intent that at least one member of the racketeering conspiracy would commit at least two predicate racketeering acts in the conduct of the affairs of the enterprise.

**I.     MR. SMITH'S OBJECTIONS TO THE PRE-SENTENCE REPORT SHOULD BE SUSTAINED**

Mr. Smith made a number of objections to the Pre-Sentence Report that will be resolved

by, and through, a factual determination by this Court. The Court clearly viewed and analyzed the evidence as it was elicited during the jury trial. Many of the objections made Mr. Smith are factual and will be resolved by this Court at the sentencing hearing and, therefore, will not be addressed in great detail here. The objections concerning the proper computation of the offense level, though, are addressed below.

Section 2E1.1 of the United States Sentencing Guidelines provides the offense level for a conviction for Conspiracy to Violate RICO is 19. The section continues by providing that offense level also can be "the offense level applicable to the underlying racketeering activity." This provision requires the court to determine what underlying racketeering activity can be attributed to each Defendant and perform the appropriate computation to determine the offense level. Here, the matter is complicated because the Court did not utilize special verdict forms. Consequently, this Court will determine whether sufficient evidence has been elicited to determine whether Mr. Smith's offense level should be nineteen or some higher number based upon the Racketeering Acts set forth in Pre-Sentence Report.

**A. The Court should utilize a "beyond a reasonable doubt" standard when determining the predicate acts that may increase Defendant Smith's offense level**

The Government relies on four cases for the proposition that this Court can increase the offense level based upon a preponderance of the evidence standard. The cases at issue, though, were not related to the RICO conspiracy statute or the enhancement as set forth in Section 2E1.1 of the United States Sentencing Guidelines. *United States v. Bridges* concerned a an enhancement pursuant to §2K2.1(b)(6) for carrying a firearm in connection with another felony offense. In *United States v. Smart*, the Defendant's enhancement was related to the possession of stolen guns, pursuant to §2K2.1 relying on the application notes to section 2K2.1 that provide

"whether the defendant knew or had reason to believe that the firearm was stolen...." U.S.S.G. § 2K2.1 cmt. n. 8.  In *United States v. Mustafa,* the Defendant was sentenced pursuant to §2B1.1(a)(1) and enhancements pursuant to §2B1.1(b)(1)(H) for lost amount and total victims.  Finally, *United States v. Okai*, related to offense levels related to §§2B5.1(b)(1)(B) and 2B1.1(b)(1)(C) and enhancements pursuant to 2B5.1(b)(5) for committing the offense outside of the United States.  In each case, the enhancement was not pursuant to §2E1.1, and therefore, this Court should not rely upon their respective holdings.

This Court, instead, should make its factual determinations as set forth in the 11th Circuit.  In 2001, the Eleventh Circuit Court of Appeals held that the District Court was required to find beyond a reasonable doubt predicate acts underlying each defendant's conspiracy conviction to determine the appropriate offense level.  In *United States v. Nguyen*, 255 F.3d 1335 (11th Cir. 2001), the Defendant argued that the Court erred in failing to apply the reasonable doubt standard in determining the predicate acts that formed the bases of their sentences on the RICO conspiracy count. *Id at* 1340.  The Government argued the preponderance of the evidence is the correct standard.  The 11th Circuit explained that the base offense level for violation of the RICO statute is the greater of nineteen or "the offense level applicable to the underlying racketeering activity."  U.S.S.G. §2E1.1.  The Guidelines further advise that, if there was no more than one activity underlying a RICO violation, that the could should "treat each underlying offense as if contained in a separate count of conviction" to determine which predicate act, or group of acts, would lead to the greater offense level.  U.S.S.G. §2E.1.1, comment. (n.1).  In determining the proper offense level, the district court relied upon "acts the defendants had committed by a preponderance of the evidence." *Id* at 1340.

The 11th Circuit agreed with the Defendants.  The Court explained that in 1993, in *United*

*States v. McKinley*, the trial court had refused a defense request for a special verdict that would have identified which of the object offenses the Defendants conspired to commit. *See United States v. McKinley,* 995 F.2d 1020 (11th Cir. 1993). The Jury returned a general verdict finding the Defendants guilty of conspiracy. Id. The 11th Circuit, on appeal concluded that the commentary to the Guidelines make it clear that when a jury verdict is ambiguous as to the offenses that are the object of a conspiracy, the court must find that an offense was such an object using the reasonable doubt standard before the offense can be the basis of the defendant's sentence. *See Id* at 1026. The 11th circuit extended the McKinley rule to RICO conspiracies in *United States v. DiGiorgio*, 193 F.3d 1175 (11th Cir. 1999).

In an identical case to this one, in *DiGiorgio*, the jury returned a general verdict finding Defendants guilty of RICO conspiracy but not indicating which predicate acts the jury had found defendants had committed. *See DiGiorgio 193* F.3d at 1177-1178. Because the jury verdict was ambiguous as to which acts supported the conspiracy conviction, the 11th Circuit held that the court properly based the defendants' offense level upon predicate acts that the court found defendants had committed beyond a reasonable doubt. See id.

In *Nguyen*, the jury verdicts were similarly ambiguous, and therefore, the 11th Circuit found that the district court was required to utilize a reasonable doubt standard to determine which predicate acts were used to form the offense level for Defendants' sentencing. *Nguyen at* 1342.

The instant matter is identical to the line of cases discussed for the 11th circuit and, therefore, this Circuit's rules regarding enhancements under other provisions of the Guidelines should not control. Here, Smith was convicted by the jury for conspiracy to violate RICO. This court, though, denied all of the defendants' requests for a special verdict form that would have

identified which class of predicate acts the specific Defendant agreed would occur. Consequently, this court has only a general, and ambiguous, verdict from the jury. The 11th Circuit's analysis of the proper standard as set forth above should control and this court should utilize a beyond a reasonable doubt standard when determining the predicate acts for which Mr. Smith should be responsible.

**B.     Mr. Smith did not have the requisite knowledge to receive an offense level adjustment for Racketeering Act #1, Conspiracy to Commit Murder.**

Even under a preponderance of the evidence standard, the Government must show that Mr. Smith "knowingly entered into an agreement or reached an understanding to commit a crime and that at least one of the defendants overtly acted in furtherance of the agreement. *See United States v. Ferrell,* 563 F.3d 364, 376 (8th Cir. 2009). Simply put, the Government did not, and cannot show, that Mr. Smith ever entered into any agreement with Defendants Elkins, Hunter, Lee, or Henley to commit murder at the Black New Years Party in January 2011.

The evidence, in fact, clearly showed the opposite. Mr. Smith did not know. If he did not know of the purported plans dreamt up by Defendants Elkins and Hunter, he cannot be guilty of the offense. Further, the offense level cannot be increased because he did not know.

The Government argues that Defendant's knowledge, after the fact, can support an offense level for Racketeering Act #1. The Government assertion is incorrect. First, after-the-fact knowledge is not sufficient evidence to even convict a defendant of conspiracy. *See United States v. Andujar,* 49 F.3d 16 (1st Cir. 1995) (finding that after-fact-knowledge of an illegal conspiracy and presence at the operative location are relevant factors for the jury to consider, but these factors alone are insufficient to establish a conspiracy conviction.)

Therefore, this Court should not increase Mr. Smith's offense level based upon

Racketeering Act #1.

    **C.**    **There is not sufficient evidence to establish that Mr. Smith's offense level should be increase for Racketeering Act #2, Attempt to Commit Murder.**

The Pre-Sentence Report, in paragraph 73, sets Smith's offense level for Racketeering Act #2 at 33 for Attempt to Commit Murder. The record, though, is devoid of sufficient evidence to justify this conclusion.

The Government suggests that the testimony of Bryan Cook that Smith authorized the murder of "Corndog" the National President of the Hells Lovers. The evidence, however, is not clear, convincing, or sufficient enough to justify the increased offense level. Cook testified that Shakka (Defendant Elkins) told him that they had the "green light" to try and do something with the Hell's Lovers. Cook testified he understood the phrase "green light" to mean they could shoot Hells Lover's on sight. Cook further testified that Shakka told him that Mr. Smith had given the green light. Cook, on cross examination, admitted he never heard Smith give the "green light" and, in fact he had never met Mr. Smith. Therefore, the only evidence to support the Government's position that Smith was aware of, or involved, in any attempt to commit murder is testimony about what Shakka said about what Smith said. Under any standard, preponderance or beyond a reasonable doubt, that does not establish Mr. Smith was involved in, knew about, or can be held responsible for, Racketeering Act #2, Attempt to Commit Murder.

    **D.**    **There is not sufficient evidence to establish that Mr. Smith's offense level should be increase for Racketeering Act #3, Conspiracy to Commit Arson.**

The Pre-Sentence Report, in paragraph 79, sets Mr. Smith's offense level at 24 for Conspiracy to Commit Arson. The record, though, is devoid of sufficient evidence to justify this offense level.

As set out in the objections, there was no evidence at trial regarding the arson conspiracy. As set forth above, conspiracy requires more than "after-the-fact" knowledge. *See Andujar.* The evidence that is expected, and in fact mentioned in the Government's Response, makes clear it will show that Mr. Smith is notified that Hunter and Carlos Wesley Rose, Sr "had conspired" to commit arson in Chicago in February 2011. Therefore, it is expected that any evidence will only evidence after the fact knowledge and, that alone, is not sufficient evidence to justify the increase offense level as set forth in paragraph 79.

## II.   JAMES SMITH SHOULD RECEIVE A SENTENCE THAT IS LESS THAN THE ADVISORY GUIDELINE RANGE AS DEFINED BY THE UNITED STATES SENTENCING GUIDELINE MANUAL

The Court's task of sentencing is guided by 18 U.S.C. §3553(a) and the Supreme Court's recent decisions in *Booker*, *Gall*, and *Rita*, all which control the application of the Guidelines.

After Booker, the Sentencing Reform Act, as revised by Booker, requires a sentencing court to consider Guideline ranges, see 18 U.S.C.A. §3553(a)(4), but it permits the court to tailor the sentence in light of other statutory concerns as well, see §3553(a). *See United States v. Booker,* 125 S.Ct. 738, 757 (2005). Thus, under *Booker*, sentencing courts must treat guidelines as just one of a number of sentencing factors as set forth in 18 U.S.C.A. §3553(a).

The primary directive in Section 3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2. Section 3553(a)(2) states that such purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing Courts to consider the following factors:

  1) the nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(1));

  2) the kinds of sentences available (§ 3553(a)(3));

  3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (§ 3553(a)(6)); and

  4) the need to provide restitution to any victims of the offense.  (§ 3553(a)(7)).

Other statutory sections also give the district court direction in sentencing.  Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to recognize that imprisonment is *not* an appropriate means of promoting correction and rehabilitation (emphasis added).  Under 18 U.S.C. § 3661, *no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence (emphasis added).

This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines.  S*ee* U.S.S.G. § 5H1.   The directives of *Booker* and § 3553(a) make clear that courts may no longer uncritically apply the guidelines.  Such an approach would

be inconsistent with the holdings of the merits majority in *Booker*, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in *Booker*, directing courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore. *United States v. Ranum*, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J.).

As another district court judge has correctly observed, any approach which automatically gives heavy weight to the guideline range comes perilously close to the mandatory regime found to be constitutionally infirm in Booker. *United States v. Jaber*, 362 F. Supp. 2d 365, (2005). *See also United States v. Ameline*, 400 F.3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence), rehearing *en banc* granted, 401 F.3d 1007 (9th Cir. 2005). The remedial majority clearly understood that giving any special weight to the guideline range relative to the other Section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider all of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines. *See United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since § 3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

**A.     Nature and circumstances of the offense and history and characteristics of the Defendant.**

The first factor for the Court's consideration is the nature and circumstances of the

offense and the history and characteristics of the Defendant. This memorandum and the Pre-Sentence Report set forth the facts and circumstances of the offense. As previously discussed, Mr. Smith was convicted of Conspiracy to violate RICO.   Though, RICO and conspiracy to violate RICO is a serious offense, the Court's analysis should include more than the description of the predicate acts described in the Indictment and Pre-Sentencing Report.  Defendant Smith was the National Vice-President of Wheels of Soul, but the evidence made clear that he did not have advance knowledge of any of the violent acts that ultimately formed the basis of the RICO conspiracy.

In every instance, the incident resulted from a spontaneous altercation at an event that did NOT include James Smith.  In Indiana, Missouri, Illinois, and Ohio, the incidents that ultimately resulted in violence did not include James Smith and the evidence made clear he had no advance knowledge of such conduct.  Simply put, Mr. Smith is not as culpable for those actions as the individuals who ultimately carried them out.

In addition, the Racketeering Acts that the Probation Office and Government suggest should be attributed to Mr. Smith were not completed.  That is, the conspiracy to commit murder, the attempted murder, and the attempted arson did not occur.  They were only discussed in the vaguest of terms.  Clearly, an act that is not completed is not as serious as one that is completed.  This is borne out by the lesser punishment given to Defendants convicted of Attempt as opposed to a completed act.  See 18 U.S.C.A. §1111 (Punishment for murder is life imprisonment); See 18 U.S.C.A. §1113 (Punishment for Attempted Murder is up to twenty years imprisonment).  Each of the Racketeering Acts that the Government suggested are attributable to Mr. Smith in the pre-sentence report was not completed and, therefore, the punishment must comport with that fact.

The Statute, though, requires more than consideration of the seriousness of the offense. It also requires a review of the Defendant's history and characteristics. Mr. Smith, as set out in the Pre-Sentence Report is a sixty seven year old man with no criminal history. Many appellate courts, including the 8th Circuit, have held that a downward variance based upon age and related factors can be appropriate. *See U.S. v. Chase*, 560 F.3d 828 (8th Cir. 2009) (Defendant's advanced age, health, and employment history could support downward variance even if it didn't support formal departure.) *See also United States v. Dusenberry*, 9 F.3d 110 (6th Cir 1993) (downward departure granted due to Defendant's age and medical condition); *See also U.S. v. Clark*, 289 Fed. Appx. 44 (5th Cir. 2008) (court applied below guideline sentence term of 190 months for methamphetamine conspiracy conviction because defendant's age made him unlikely to commit further crime upon release).

Furthermore, Mr. Smith has worked, full time, since he was eighteen years old. Most recently, he has worked as a maintenance man averaging more than forty hours per week. Mr. Smith regularly pays his taxes and has been a productive member of society his entire life. He is involved in a long time relationship with Joyce Howe. Ms. Howe and Mr. Smith have lived together for over twenty years. They rely upon each other for everything. Ms. Howe has significant medical problems and Mr. Smith provided much of the care and all of the financial support that she needed. Mr. Smith's employment history, relationship, and part in society also can support a downward variance. *See U.S. v. Wachowiak*, 496 F.3d 744 (7th Cir. 2007) (affirming district court's imposition of 70 month sentence for defendant convicted of child pornography, where guideline range was 121 to 151 months in part because record demonstrated defendant was a kind, caring individual, who enjoyed broad support of family, friends, colleagues, and teachers). The court stated "The guidelines failed to consider defendant's

otherwise outstanding character, as depicted in the many supportive letters …while §3553 (a)(1) requires the court to consider the character of the defendant, the guidelines account only for criminal history. In cases where the defendant led an otherwise praiseworthy life, the court should consider a sentence below the advisory range." *Citing U.S. v. Page*, 2005 U.S. Dist. LEXIS 19152, at *12 (E.D.Wis. 2005) *and U.S. v. Ranum*, 353 F.Supp. 2d 984, 986 (E.D. Wis. 2005).

In addition to Ms. Howe's medical conditions, Mr. Smith also suffers from an extremely painful back, knee, and ankle. Currently, Mr. Smith has significant trouble moving around, particularly after sitting or resting for long periods. Mr. Smith's age, lack of criminal history, medical condition, and long-time employment are all significant factors this Court should consider when determining the ultimate sentence imposed in this matter.

**B.      Sentence reflects seriousness of the offense, respect for the law, and punishment for the offense**

This Court also must consider whether the imposed sentence reflects the seriousness of the offense, to promote respect for the law, and to provide punishment for the offense. Here, a sentence less than the Advisory Guideline Range will satisfy those requirements. Even a minimal sentence of imprisonment or a sentence of probation would adequately reflect the seriousness of the offense to which Mr. Smith was convicted. Mr. Smith will undoubtedly spend a significant time at the very end of his life in prison. Any sentence of imprisonment, to a sixty seven year old man in poor health, is significant enough to reflect the seriousness of the offense. This conviction has affected Mr. Smith's financial position, and, more importantly he will forever have to live with not being able to provide support to his wife Joyce Howe.

Furthermore, the guidelines in this case overstate the seriousness of Mr. Smith's conduct.

The Government essentially argues that Mr. Smith should be punished for the conduct of the many co-defendants in this case because, they allege, he was the driving force behind the criminal conduct. Here, Mr. Smith did not commit one violent act. He did not instruct one person to commit a violent act. Consequently, a sentence that is equal to the maximum provided by statute, for a person who has no criminal history, a long time employment record, and has been a productive member of society clearly is not reasonable. *See U.S. v. Grossman*, 513 F.3d. 592 (6th Cir. 2008)(affirming reduction from 120 months to 66 months based on district judge's assessment that the range "was not reflective of what [Grossman] did"; Court noted that as the 135 – 168 month range was higher than statutory maximum, this evidenced guidelines overstated the offense.). Here, the advisory guideline range, as set out in the Pre-Sentence Report is also over the statutory maximum, which further reflects the guidelines have overstated the offense.

As other courts have stated, when the guidelines have skewed average defendants to the upper end of the statutory range, it illustrates the guidelines are not producing a sentence that is no greater than necessary for just punishment and on basis of individualized determination. *U.S. v. Beiermann*, 2009 WL 467628 (N.D. Iowa 2009) (imposing 90 month with ten year supervised release under §3553 (a), rejecting guideline range of 210 – 262 months). Here, Mr. Smith's age and lack of criminal history means he is less of a risk than an "average defendant". As the Court is aware, the recidivism for people over fifty at the time of sentencing, the rate is only 6.2%. U.S. Sentencing Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines. Mr. Smith's lack of criminal history, long-time employment history, age, and medical conditions evidence that he is not average within the criminal justice system, and this Court should sentence him accordingly.

### C. Sentence that protects public

Third, the Court must ensure the imposed sentence protects the public from further crimes from this Defendant. Clearly, Mr. Smith, at his advanced age and impaired health is not a threat to the public. To the extent that he was a threat while he was a member of the Wheels of Soul, Mr. Smith is no longer a threat. This Court can impose conditions upon Mr. Smith that will even further minimize, or eliminate, any threat that Mr. Smith might have been to the public.

### D. Sentence that provides Defendant with needed treatment and/or training

Finally, the Court must consider whether a sentence of imprisonment would provide Mr. Smith the needed training, education, medical treatment, or other necessary treatment to successfully navigate the remainder of his life. Mr. Smith, if he was younger, would clearly benefit from further education and training. Unfortunately, Mr. Smith's advanced age mean this Court should primarily review whether there is medical treatment available that will benefit Mr. Smith and the remainder of his life.

## III. CONCLUSION

Mr. Smith began working to care for his family at the age of fourteen. Since that time, he has worked full-time to care for himself and, eventually, for Joyce Howe. Mr. Smith is sixty-seven years old with no criminal history.

To put it simply, Mr. Smith has suffered, and will continue to suffer, consequences as a result of these convictions. Upon consideration of all of the factors set forth in 18 U.S.C. §3553, this Court can, and should, impose a sentence that is less than that which is contained in the Advisory Guideline Range. Here, a sentence of no more than twenty-four months would be sufficient, but not greater than necessary to satisfy the requirements of 18 U.S.C. § 3553.

Respectfully submitted,

*/s/ Christopher A. Pickett*
Christopher A. Pickett, #MO59051
Greensfelder, Hemker, & Gale PC
10 South Broadway, Suite 2000
St. Louis, MO 63102
314-516-2654
314-852-0982 (facsimile)
cap@greensfelder.com

Attorney for Defendant James C. Smith

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of April 2013, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Sirena M. Wissler, Assistant U.S. Attorney
James C. Delworth, Assistant U.S. Attorney
D. John Sauer, Assistant U.S. Attorney

*/s/ Christopher A. Pickett*