UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. S1-4:11 CR 246 CDP |
| | ) |
| JAMES C. SMITH, a/k/a "Animal," | ) |
| | ) |
|     Defendant. | ) |

**GOVERNMENT'S RESPONSE TO DEFENDANT SMITH'S
"SENTENCING MEMORANDUM"**

COMES NOW, the United States of America, by and through Richard G. Callahan,

United States Attorney for the Eastern District of Missouri, and Sirena M. Wissler, Assistant

United States Attorney for said District, and responds to defendant James C. Smith's

"Sentencing Memorandum."[1]

**ARGUMENT**

**I. This Court should utilize the "preponderance of the evidence" standard in calculating defendant Smith's Base Offense Level, and in applying any adjustments under the advisory United States Sentencing Guidelines.**

As the Court is aware, it will be called upon at the time of defendant Smith's sentencing

to make calculations under the United States Sentencing Guidelines. Among the calculations the

---

[1] To the extent that defendant Smith characterizes his most recent pleading as a "Sentencing Memorandum," the government notes that in addition to addressing subject matter traditionally covered in a pre-sentencing memorandum to the Court, defendant Smith's filing also contains legal argument regarding his objections to the Pre-Sentence report. Obviously, the government was unable to address this argument in its responses to defendant Smith's objections to the Pre-Sentence report, because this argument was not contained therein. Therefore, the government files, separately, this Response to defendant Smith's "Sentencing Memorandum."

1

Court must make is the Total Offense Level for the sole count of conviction - Count I - Racketeering Conspiracy.  Defendant Smith correctly notes that guideline applicable to Racketeering Conspiracy is Section 2E1.1.  That section provides that the base offense level is the greater of "19" or "the offense level applicable to the underlying racketeering activity." U.S.S.G. §2E1.1.  The Application Notes to that section further provide that "[W]here there is more than one underlying offense, treat each underlying offense as if contained in a separate count of conviction," and that where "the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used."  U.S.S.G. §2E1.1, Application Notes 1, 2.  The government and defendant Smith agree that because the jury was not required to state the specific offenses to which it unanimously found defendant Smith had agreed to commit, the Court must determine the "underlying racketeering activity" that should be considered in calculating defendant Smith's Total Offense Level.  The parties differ, however, on the appropriate standard the Court should apply in making that determination.

Defendant Smith urges the Court to utilize the "beyond a reasonable doubt" standard in deciding which offenses should be included in calculating his Total Offense Level as to Count I. In doing so, defendant Smith relies exclusively on cases from the United States Court of Appeals for the Eleventh Circuit.[2]  As a preliminary matter, and perhaps most obviously, this Court is not

---

[2]For his part, defendant Smith complains that the government relies on "four cases for the proposition that this Court can increase the offense level based upon a preponderance of the evidence standard," but that the cases upon which the government relies "were not related to the RICO conspiracy statute."  The government invites the Court's attention to United States v. Darden, 70 F.3d 1507  (8th Cir. 1995).  In Darden, commonly referred to in this District as the "Moorish Science Temple" case, the United States Court of Appeals for the Eighth Circuit specifically noted that "[W]hen sentencing a defendant, a district court may consider uncharged, relevant conduct that has been established by a preponderance of the evidence." Id. at 1545. Darden has not been overruled or abrogated, and it remains binding authority in this Circuit.

2

located in that Circuit.  Therefore, while this Court is certainly at liberty to consider and even follow a ruling of that Circuit Court, it is not obliged to do so.  In the government's view, the Court should decline defendant Smith's invitation to follow the Eleventh Circuit's reasoning.

Where, as here, a jury has convicted a defendant on a RICO conspiracy offense by a general verdict, or the defendant has pled guilty to a RICO conspiracy offense, and it cannot be determined which specific predicate acts the defendant agreed would be committed in furtherance of the conspiracy, must the sentencing court find that the defendant agreed to the commission of the specific racketeering act at issue by a preponderance of the evidence, or by proof beyond a reasonable doubt?   As defendant Smith argues, the Eleventh Circuit has held that the Court must include only underlying racketeering conduct that it finds beyond a reasonable doubt.  In United States v. Farese, 248 F.3d 1056 (11th Cir. 2001), the Eleventh Circuit explained its rationale as follows:

> Section 2E1.1 of the sentencing guidelines sets the base offense level for a violation of the racketeering statute, 18 U.S.C. § 1962, at the greater of 19 or the offense level applicable to the underlying racketeering activity.
>
> \* \* \*
>
> It will not always be clear what the underlying racketeering activity is under U.S.S.G. § 2E1.1(a) for the purpose of calculating the defendant's offense level, because the jury's verdict or the guilty plea may not specify which of the offenses listed in the indictment was the object of the conspiracy.  In these circumstances section 1B1.2(d) instructs courts how to select the appropriate offense level.  That section provides: "A conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit."  U.S.S.G. § 1B1.2(d).  However, the commentary to section 1B1.2(d) goes on to caution that:

> Particular care must be taken in applying subsection (d) because there are cases in which the verdict or plea does not establish which offense(s) was the object of the conspiracy. In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense.

Id. § 1B1.2 commentary at para. 4. We have interpreted the words "were it sitting as a trier of fact" in this commentary to mean that the district court must find beyond a reasonable doubt that the defendant conspired to commit a particular object offense before the court can sentence the defendant on the basis of that offense.

Id., at 1059-61. Accord United States v. Nguyen, 255 F.1335, 1340-42 (11th Cir. 2001).

Although defendant Smith correctly characterizes, although perhaps in oversimplified form, the Eleventh Circuit's holding in Nguyen, he fails to note that other Circuits have expressly rejected the Eleventh Circuit's conclusions. For example, in United States v. Corrado, 227 F.3d 528, 541 (6th Cir. 2000), the Sixth Circuit held that U.S.S.G § 1B1.2(d) did not apply because a RICO conspiracy offense is "not a multi-object conspiracy." Rather a "RICO conspiracy . . . is considered a single object conspiracy with that object being the violation of RICO." Id., at 541-42, quoting, United States v. Carrozza, 4F.3d 70, 79 (1st Cir. 1993).[3]  The

---

[3] Courts have repeatedly stated, albeit not in the sentencing context at issue here, that the object of a RICO conspiracy agreement is not to commit the charged racketeering acts. Rather, the single objective of a RICO conspiracy is an agreement to participate in the commission of a substantive RICO offense. See, e.g., United States v. Massey, 89 F.3d 1433, 1440-41 (11th Cir. 1996), cert. denied, 117 S. Ct. 983 (1997); United States v. Marmolejo, 89 F.3d 1185, 1196 (5th Cir. 1996), aff'sub nom. Salinas v. United States, 522 U.S. 52 (1997); United States v. Maloney, 71 F.3d 645, 664 (7th Cir. 1995), cert. denied, 117 S. Ct. 295 (1996); United States v. Antar, 53 F.3d 568, 581 (3rd Cir. 1995); United States v. Viola, 35 F.3d 37, 43 (2nd Cir. 1994), cert. denied, 115 S. Ct. 1270 (1995); Baumer v. Pachl, 8 F.3d 1341, 1346 (9th Cir. 1993); United States v. Church, 955 F.2d 688, 694 (11th Cir.), cert. denied, 506 U.S. 881 (1992); United States v. Glecier, 923 F.2d 496, 500 (7th Cir. 1991); United States v. Pyrba, 900 F.2d 748, 760 (4th Cir.), cert. denied, 498 U.S. 924 (1990); United States v. Phillips, 874 F.2d 123, 127-30 and n.4 (3rd Cir. 1989); United States v. Joseph, 835 F.2d 1149, 1151-52 (6th Cir. 1987); United States v.

4

Sixth Circuit further explained:

> Thus, the underlying acts of racketeering in a RICO conspiracy are not considered to be the object of conspiracy, but simply conduct that is relevant to the central objective - participating in a criminal enterprise.  The existence of relevant conduct is determined at sentencing by a preponderance of the evidence.

Corrado, 227 F.3d at 542.  Accord Carrozza, 4 F.3d 70, 77-80 (1st Cir. 1993); see also, United States v. Yanotti, 541 F.3d 112, 129 (2nd Cir. 2008) ("[B]ecause overt acts are not distinct offenses that must be proven to sustain a RICO conspiracy conviction, and the RICO conspiracy charged in this case is appropriately viewed as a single-object conspiracy, we now join the First and Sixth Circuits in concluding that U.S.S.G. § 1B1.2 is inapplicable; in so holding, we reject the approach taken by the Eleventh Circuit in United States v. Farese, 248 F.3d 1056, 1060-61 (11th Cir. 2001)), cert. denied, 129 S.Ct. 1649 (2009).

Even the Eleventh Circuit itself has retreated from (or at least declined to apply) Farese. In United States v. Bradley, 644 F.3d 1213 (11th Cir. 2011), the Eleventh Circuit Court of Appeals reviewed a case in which defendant Bradley was charged with two RICO offenses - a substantive RICO violation and a RICO conspiracy - and a number of substantive offenses including wire fraud.  Id. at 1294.   Bradley was convicted by a jury of the substantive RICO violation, but acquitted of the RICO conspiracy.  Id.  The jury returned a special verdict in which it found beyond a reasonable doubt that Bradley had committed twenty-three separate racketeering acts, thus forming the basis of the conviction on the substantive RICO charge.  Id. However, the jury acquitted Bradley of wire fraud, both in its special verdict and as to separate,

---

Neapolitan, 791 F.2d 489, 497 (7th Cir.), cert. denied, 479 U.S. 939 (1986); United States v. Carter, 721 F.2d 1514, 1529 (11th Cir.), cert. denied, 469 U.S. 819 (1984); United States v. Riccobene, 709 F.2d 214, 224-25 (3rd Cir.), cert. denied, 464 U.S. 849 (1983).

5

substantive counts. When calculating Bradley's sentence, the district court included wire fraud, despite the fact that Bradley had been acquitted by the jury of that conduct.

On appeal, Bradley argued that due process and estoppel prevented the district court from sentencing him based upon conduct for which the jury had acquitted him. Id. The Eleventh Circuit first noted that "'[s]entencing courts may consider both uncharged and acquitted conduct in determining the appropriate sentence.'" Id. at 1295, FN 137 (internal citation omitted). The Court then stated, "[T]here is not, and never has been, a requirement that the district court make its sentencing decision based solely on conduct the jury found beyond a reasonable doubt." Id. at 1296. To the contrary, the Eleventh Circuit noted that it had

> repeatedly held that, after identifying the guideline that applies to the offense of conviction and the base offense level, the district court may find all other facts relevant to Specific Offense Characteristics and Adjustments by a preponderance of the evidence.

Id. at 1296.

In Bradley, the defendant was convicted only of a substantive RICO violation. The jury acquitted Bradley of a RICO conspiracy. The Court of Appeals noted that "§1B1.3 tells the district court to consider all the relevant conduct when determining the defendant's total offense level." Id. Furthermore, the Court noted, "[W]hen an offense involves 'jointly undertaken criminal activity,' relevant conduct includes 'all reasonably forseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.' U.S.S.G. §1B1.3(a)(1)(B) " Id. In order to establish the

> defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (*i.e.,* the scope of the specific conduct and objectives

> embraced by the defendant's agreement). The conduct of others that were both in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by the defendant is relevant conduct under this provision.
>
> Accordingly, under §1B1.3(a), when a defendant is acting in concert with others, the appropriate conduct to consider for sentencing purposes is far broader than the conduct that drove the original conviction.
>
> By definition, the RICO violation charged in Count I is a criminal enterprise undertaken by a defendant in concert with others. 18 U.S.C. §1962(c). And the jury's guilty verdict on Count I confirms that Bradley, Jr. Was part of just such an enterprise. Therefore, in this case, the relevant conduct rules for "jointly undertaken criminal activity" must apply.

Id. at 1297. Remarkably, the Eleventh Circuit then cited - *with approval* - the Carrozza case from the First Circuit, cited herein. The Court then went on to conclude that

> [B]ecause the relevant conduct rules apply, the district court was required to decide, *by a preponderance of the evidence*, the exact "scope" of the RICO enterprise Bradley, Jr. Joined. Namely, the court had to determine whether Bradley, Jr., agreed to take part in a criminal organization engaged in wire fraud, interstate trafficking, and mail fraud. Adopting the PSI, it found that he had done so. Accordingly, it correctly treated those acts as relevant conduct racketeering offenses under §1B1.3. And pursuant to §2E1.1's instruction to apply the greatest total offense level for all underlying racketeering offenses, it *did not err in selecting an sentencing range on those predicate acts.*

Id. (emphasis added) As a result of the Eleventh Circuit's holding in Bradley, the defendant therein was sentenced based upon a Total Offense Level obtained by including offenses which the district court found *by a preponderance of the evidence,* despite the fact that those same offenses were affirmatively rejected by the jury. It thus appears that, even in the Eleventh Circuit itself, the holding in Farese has so eroded that it has become untenable. To hold in Bradley that the defendant could properly be sentenced on a substantive RICO conviction based

7

upon offenses for which he was acquitted but which the district court found by a preponderance of the evidence, but to then conclude that in a RICO conspiracy case, the district court must utilize a "beyond a reasonable doubt" standard would produce a result so completely anomalous that it would defy logic.

Before concluding, it is worth noting the date on which <u>Nguyen</u> was decided, and the sea change in sentencing jurisprudence that has occurred since that time. <u>Nguyen</u> was decided in 2001 - four years before the United States Supreme Court decided <u>United States v. Booker</u>, 543 U.S. 220, 259-60 (2005). In <u>Booker</u>, the Court was called upon to consider the constitutionality of a *mandatory* sentencing scheme that permitted a defendant to be sentenced based upon facts not found by a jury beyond a reasonable doubt. In a lengthy opinion, the Court reiterated the well-settled proposition that the Sixth Amendment's requirement that any fact (other than a prior conviction), necessary to justify a *sentence exceeding the maximum* authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. <u>Id.</u> at 230-2, <u>citing</u> <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)(emphasis added). The Court noted that despite the rigors of the Sixth Amendment, the Federal Sentencing Act called for promulgation of federal sentencing guidelines which would be not merely discretionary or advisory, but *mandatory*. The *mandatory* nature of the guidelines placed them squarely at odds with the Sixth Amendment. As the Supreme Court explained,

> [I]f the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. <u>See</u>

8

> Apprendi, 530 U.S., at 481, 120 S.Ct. 2348; Williams v. New York, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the SRA the provisions that make the Guidelines binding on district judges; it is that circumstance that makes the Court's answer to the second question presented possible. For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.
>
> The Guidelines as written, however, are not advisory; they are mandatory and binding on all judges.FN2 While subsection *234 a) of § 3553 of the sentencing statute FN3 lists the Sentencing Guidelines as one factor to be considered in imposing a sentence, subsection (b) directs that the court "*shall* impose a sentence of the kind, and within the range" established by the Guidelines, subject to departures in specific, limited cases. (Emphasis added by Court.) Because they are binding on judges, we have consistently held that the Guidelines have the force and effect of laws. See, e.g., Mistretta v. United States, 488 U.S. 361, 391, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989); Stinson v. United States, 508 U.S. 36, 42, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993).

As this Court is well aware, the Supreme Court's remedy to the untenable conflict between the Sentencing Guidelines and the Sixth Amendment was simply to excise the provision establishing the *mandatory* nature of the Sentencing Guidelines.  Booker, 543 U.S. at 259.[4]  As a result, the Sentencing Guidelines are no longer *mandatory*, but are *advisory* only.

As defendant Smith acknowledges the government cited several Eighth Circuit in the government's response to defendant Smith's objections to the Pre-Sentence Report.  Each of those cases stands for the proposition that "[U]nder an *advisory sentencing regime*, 'the district court is entitled to determine sentences based upon judge-found facts and uncharged conduct'

---

[4]The Court also excised the provision that established the standard of review on appeal. Id.

9

where the defendant is 'not sentenced in excess of the statutory maximum.'" United States v. Bridges, 569 F.3d 374, 377 (8th Cir. 2009)(internal citations omitted)(emphasis added). Moreover, "[U]nder the *advisory guidelines*, sentencing judges are only required to find facts by a preponderance of the evidence." United States v. Smart, 501 F.3d 862, 867 (8th Cir. 2007)(emphasis added). In fact, the United States Court of Appeals has "repeatedly held that 'due process never requires applying more than a preponderance-of-the-evidence standard for finding sentencing facts, even where the fact-finding has "an extremely disproportionate impact on the defendant's advisory [sentencing] range."'" United States v. Mustafa, 695 F.3d 860, 861 (8th Cir. 2012). One case to which the government has cited goes further, concluding that "sentencing facts found by a preponderance of the evidence, whether under a mandatory or an advisory Guidelines regime, generally comport with due process." United States v. Okai, 454 F.3d 848, 851 (8th Cir. 2006)). Although defendant Smith criticizes these cases as distinguishable because they are not RICO conspiracy cases, defendant Smith offers this Court no Eighth Circuit case law suggesting that this Court must apply a standard other than the "preponderance of the evidence" standard in finding sentencing facts, simply because this case is a RICO conspiracy case. In short, Bridges and the other cases cited by the government apply with equal force to the disputed sentencing facts in the instant case as they do to any other situation in which the parties disagree as to the appropriate application of the Sentencing Guidelines. Each of these cases, decided after Booker, make it abundantly clear that under an *advisory* guidelines regime, this Court is empowered to sentence defendant Smith based upon facts it finds by a preponderance of the evidence.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court reject defendant Smith's suggestion that it must include in the Guidelines calculation only those offenses it finds to have been proven beyond a reasonable doubt, and that instead, the Court include any and all offenses and Guidelines enhancements the government has proven (or will prove) by a preponderance of the evidence.

                    Respectfully submitted,

                    RICHARD G. CALLAHAN
                    United States Attorney

                    s/ Sirena M. Wissler
                    SIRENA M. WISSLER, #55374MO
                    Assistant United States Attorney
                    111 South 10th Street, Room 20.333
                    St. Louis, Missouri 63102
                    (314) 539-2200

## **CERTIFICATE OF SERVICE**

  I hereby certify that on April 9, 2013, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

   Christopher Pickett
   Greensfelder, Hemker, & Gale, PC
   10 South Broadway, Suite 2000
   St. Louis, MO 63102

            s/ Sirena M. Wissler
            SIRENA M. WISSLER, #55374MO
            Assistant United States Attorney