IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) No. S1-4:11 CR 246 CDP |
| | ) |
| TIMOTHY BALLE | ) |
| | ) |
|     Defendant. | ) |

### DEFENDANT'S SENTENCING MEMORANDUM

Comes now Defendant Timothy Balle and presents the following in anticipation of sentencing.

The Presentence Report erroneously concludes that Mr. Balle's advisory guideline range is 188 months to 235 months.  This guideline range is based on a misapplication of the following sections:

Paragraph 81; Cross reference under Count VII: Pursuant to 2K2.1(c), sale of a firearm to a previously convicted felon.  Erroneous cross reference to conspiracy to commit murder.

Paragraphs 71, 84, 77; Adjustment for obstruction of justice:  Based on two letters allegedly sent by Mr. Balle while he was confined.

Paragraph 73; Tampering with a witness: Based on recorded phone conversations made after the incident on August 15, 2009.

The above application of guidelines are not applicable for the following reasons:

<u>The Cross Reference under 2K2.1(c)</u>. The jury was instructed with regard to the shooting incident of August 15, 2009, at the Dem Boyz Clubhouse on self defense. Both Timothy Balle and Dominic Henley were acquitted of murder. The evidence shows that after the incident club members were concerned about their own safety. Within hours of the incident the government informant, Mad Matt, expressed fear of retaliation from members of area motorcycle clubs. According to Officer Van Mierlo, he called her and expressed grave concerns that he would become a target based on his association with the Wheels of Soul.

The club members who talked about the incident covered four major topics. The first was a general disappointment and disillusion in Dominic Henley's leadership. Next was concern about how the incident started. There was general concern about the possibility of the friends and fellow club members of the deceased possibly extracting revenge. Fourth, there was discussion about Timothy Balle and his concern for the safety and upkeep of his pets and his home while he was confined. To the least extent there was some discussion about what to do in the aftermath. It is clear from the recording that involved Mr. Balle that his concern was about his safety and the fear of retaliation. Other than conversation regarding how to handle the perceived rivalry with the clubs, absolutely no action was taken by any members of the club. This was general conversation, not planning.

In the period between the shooting and the time of Mr. Balle's weapon sale to Mad Matt, the two had a few conversations. Again, the conversations that were recorded related to fear of reprisals.

The undercover informant, Mad Matt, initially testified under cross examination that he was not in fear of his safety after the incident. Under further cross he admitted that he had received at least one phone call advising him that he may be in danger. Task Force Officer Van Mierlo testified that Mad Matt had called her within hours of the incident to express his fear for his safety as a result of the incident.

Mad Matt testified that he set up the gun sale at the direction of Task Force Officer Van Mierlo. He testified that he thought it was his job to make sure the gun sale happened. As part of that he would agree with and encourage whatever Mr. Balle had to say. Evidence that supports a theory of conspiracy to commit murder is virtually non-existent.

During the direct examination of Mad Matt the government asked only one question that mentioned retaliation as a motive for the sale. The majority of Mad Matt's testimony, his conversations with Mr. Balle before and during the sale relate to the sale itself and information about the weapon. During the sale there is general conversation about Mr. Balle's and Mad Matt's disillusion with Dominic Henley. There is one comment by Mr. Balle relating to whether or not weapons are being brought down from Chicago for some action. The evidence taken as a whole is far from any implication of conspiracy to commit murder.

During the sale of the gun there is no talk about a plan for retaliation.  There is some discussion about what possibly could be done, however nothing in the way of planning ever occurs.  There is no discussion about when to meet next.  There is no discussion about roles of the alleged co-conspirators.  There is no specific discussion of against whom this alleged retaliation would even occur.  Most importantly, after the weapon sale nothing else happens. Mad Matt testified that he talked to Mr. Balle maybe a few times after the gun sale.  There are no recordings nor is there evidence that Mr. Balle followed up with this so-called plan.

It cannot be determined by a preponderance of the evidence that the sale was a part of a conspiracy to commit murder.  One of the reasons is there is an alternative explanation for the sale.  As stated above, the remaining members of Wheels of Soul, especially Mr. Balle and Mad Matt, were concerned about retaliation.  It is more likely that the sale was in anticipation of self defense.  It is most likely that the sale was exactly what the evidence showed, a gun sale for money.  It is clear from the evidence that Mad Matt was the only one who had the financial wherewithal among the few members of the Wheels of Soul during this time.  At one point Mad Matt, through law enforcement, fronted the money to rent a room for a club meeting.  No one else in the club had the money to contribute towards a downpayment for the meeting room.  Mr. Balle made $300.00 from the sale.  It is most likely the money was the motivation for the sale and the conversation was merely to make sure the sale went through.  Mad Matt admitted as much on cross.  There are more questions about this alleged conspiracy than there are answers.

It is in the District Court's discretion to decide whether the cross-reference applies. There is no Eighth Circuit case entirely on point. This is likely due to the low level of evidence in this case. For example, in <u>United States v. Howe</u>, 538 F.3d 842 (8th Cir. 2008) there was clear evidence of planning and organizing by the defendant.

<u>Tampering with a Witness</u>. The probation report creates a charge. This could affect the base offense level depending on the rulings on Defendant's other objections. There is not a preponderance of the evidence to support this conclusion. As stated, the conversation among the Wheels of Soul members in the aftermath of the shooting at Dem Boyz covered many topics. While there was some general discussion regarding what to do in the aftermath in the shooting, there is no conversation regarding a plan to retaliate against or intimidate any witnesses. Balle describes what happened to those who were not there. These conversations happened while the incident was still fresh. The declarants were saying what they were thinking and were relating the different thoughts that were going through their minds. It is clear that there was no planning to intimidate a witness while Balle was involved with the club. The clearest evidence is that nothing ever happened. No action was taken against any other club while Balle was still involved. Most importantly, Timothy Balle was minimally involved in the conversations.

For this charge to exist there must be at least some level of preparation. <u>United States v. Casteel</u>, 721 F.Supp 2d 842.

<u>Enhancement for Obstruction of Justice</u>. The Presentence Report erroneously attaches a two level enhancement for obstruction of justice based on two letters allegedly sent by Mr. Balle. One letter is to his sister. As stated in the objections, the

letter asked her to play some lottery numbers, states that the trial is shaping up to be a cross out party, asks her to hold her peace and asks her to let him know if anyone contacts her.  The plain reading of this letter does not amount to an attempt to obstruct justice.  The one sentence that refers to the charges is in accurate statement of the situation.  A number of witnesses who testified against the defendant were co-conspirators who cooperated with the government.  There is no request for any action nor any discussion of any plan to obstruct justice.

The other letter is to an individual in Texas.  The letter includes a list of names of those involved in the case.  Their names are crossed out.  Most of the names are of people who did testify at trial against Mr. Balle.  One of the names is Dominic Henley, a co-defendant.  Another name is a person who was mentioned during the trial but never testified.  The letter clearly asks for legal help.  The crossing out of the names is nothing more than a reflection of how dire Mr. Balle considered his legal situation at that point. He mentions that dna evidence had just been taken from him.

The timing of the letter is interesting.  The government had filed a motion requesting that dna samples be taken from Mr. Balle and Mr. Henley.  The government alleged that there was dna evidence found on weapons seized at the scene of the Dem Boyz incident.  All discovery at that time had stated that there was not sufficient discernable dna recovered from the weapons,  so no comparison could be made.  Mr. Balle was aware of this at the time of the filing of the government's motion and the hearing.  The magistrate judge was questioned by Mr. Balle's counsel as to whether the government had gathered sufficient evidence for comparison.  The magistrate responded

that if the government made the allegation he would believe them.  By the end of the day counsel was notified by the government that they were in error and they did not have sufficient evidence.

It is understandable that Mr. Balle was therefore frustrated and worried about the quality of his legal representation when he was put through a hearing that was allowed to progress when the underlying premise for the hearing did not exist.  This letter was written out of that frustration, not obstruction.  Therefore, this two level enhancement should not stand.

The content of the letters do not reflect the level of instruction found to support the enhancement in relevant case law.  <u>United States v. Larson</u>, 978 F.2d 1021 (8th Cir. 1992); <u>United States v. Mogan</u>, 441 F.3d 622 (8th Cir. 2006).

<u>Mr. Balle is eligible for a variance under 18 U.S.C. §3553(a)</u>.  Depending on the guideline range that the Court determines, Mr. Balle is worthy of a downward variance under 18 U.S.C. §3553(a).  Mr. Balle's prior record is more than thirty years old.  The overwhelming majority of his life was lived honestly and outside the law.  He worked legitimate jobs.  He was a minor player in the Wheels of Soul business.  The incidents that involve him have more to do with being in the wrong place at the wrong time than any plan to break the law.  As a member of Wheels of Soul he was involved minimally.

The significant incidents that Mr. Balle is linked to were not his doing.  The evidence showed that the robbery of the colors was instigated by Dominic Henley.  Mr. Balle did not act on his own but at the direction of Mr. Henley.

All the witnesses agreed that the shooting at Dem Boyz was a result of aggression by both the deceased and Mr. Henley.  Trial testimony shows that Mr. Balle was involved as a peacemaker.  He fired his weapon in self defense only after the shooting began.  When Mr. Balle realized that being a member of Wheels of Soul meant he withdrew from the organization.  If the Court somehow finds that the cross-reference to conspiracy to commit murder applies than a variance is most definitely warranted.  To give full force and effect to the guideline when Mr. Balle's involvement was minimal when it comes to a conspiracy is unwarranted.  There is no evidence of planning, no evidence of identifying a victim, or any action towards retaliation.  If mere conversation is sufficient to assess the cross-reference, than the sentence should reflect mere conversation and not actions.

Respectfully submitted,

/s/Kevin C. Curran
KEVIN C. CURRAN
First Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Kevin_Curran@fd.org
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2013, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Sirena Wissler, Assistant United States Attorney.

/s/Kevin C. Curran
KEVIN C. CURRAN
Assistant Federal Public Defender