UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:11 CR 246 CDP |
| ) | |
| JERRY PETEET(20), ) | |
| ) | |
| Defendant. ) | |

# FINDINGS OF FACT, CONCLUSIONS OF LAW, and SENTENCING OPINION

I sentenced defendant Jerry Peteet to 276 months' imprisonment following his conviction by a jury of a RICO conspiracy and attempt to commit murder in aid of racketeering. He was acquitted of a separate count of witness tampering. This opinion sets out my findings of fact on contested factual issues, my conclusions of law regarding the advisory sentencing guidelines, and my rationale for concluding that the sentence is appropriate. My findings are based on the preponderance of the evidence presented at trial. Except as set forth here, I adopt the findings of fact and legal conclusions set out in the final presentence report (PSR) [docket # 1462]. The numbering below corresponds to the paragraph numbers in the PSR.

26. Paragraph 26 accurately summarizes the evidence, and accurately points out that Peteet did not join the WOS until early May of 2009.

26, 27, 28.   Paragraphs 26, 27, and 28 are accurate.

29.   The description in Paragraph 29 of the hierarchical organizational structure of the WOS is accurate and supported by the evidence.  It is also correct in stating that evidence was submitted that was sufficient to find each defendant guilty of the RICO conspiracy.

31.   Paragraph 31 is accurate.  The evidence at trial supports the finding that the victim suffered serious bodily injury.

32 and 33.   These paragraphs accurately describe events that took place at WOS meetings.  Although there is no evidence that Peteet was present at all the meetings described in the evidence, he was present at some meetings, and the evidence supports that he joined the WOS knowingly and that he understood the "outlaw" nature of the WOS as set out in these paragraphs.

39, 40, 42, 46.  Paragraphs 39, 40, 42, and 46 are stricken as no evidence on these events was presented at trial.

34 through 38, 41, 43 through 45, and 47 and 48.  These paragraphs are accurate.  Although there was no evidence that Peteet was involved in these events, it is appropriate to include a full description of the criminal activities undertaken by conspirators in furtherance of the conspiracy.

49. In the third sentence of Paragraph 49 the word "*confrontation*" is stricken and the word "*discussion*" is inserted in its place. With that change, the description of Peteet's conduct in the shooting is accurate, as is the description of the injury to the victim.

The portion of the paragraph involving the witness tampering (the eighth, ninth, and tenth sentences) are stricken and the following is substituted: "*As to the witness tampering, after the shooting incident Peteet and others on his behalf sought to have a number of WOS members falsely state that they had witnessed the shooting and that Peteet was not the shooter. Many WOS members who were not even present in Gary signed a document to that effect. When some members balked about signing a false statement, Peteet sought the intervention of the Regional Vice President and the National Vice President. Peteet also offered the victim a bribe if the victim would change his story about who shot him. After Peteet was charged in state court, Peteet arranged for a gun, which Peteet claims was the one involved in the shooting, to be delivered to the Gary Police Department by an individual claiming to own the gun. He also obtained and provided to the state authorities and to this court a false affidavit by a WOS member, Barry Rogers, claiming to have been the shooter. Rogers did not testify at trial and his false affidavit was not provided to the jury. In July of 2009*

*Peteet filed a civil lawsuit against the victim claiming defamation because the victim had indicated Peteet had shot him.*" Peteet testified at trial and called several witnesses who testified that Peteet did not shoot the victim. I do not credit this testimony, but instead believe the testimony of the government's witnesses.

    60.    Paragraph 60 is accurate.

    62.    Paragraph 62 is accurate.

    64 - 88.  <u>Guidelines Calculations</u>:

I am sustaining only one of Peteet's objections to the guidelines calculations, and sustaining that one only in part. Paragraph 68 the PSR assesses a 3 level adjustment under § 2A2.1(b)(1)(C), concluding that the shooting victim sustained an injury that is between permanent or life threatening and serious bodily injury. I find from the evidence that the injury meets the definition of serious bodily injury and that therefore only 2 levels are added, under § 2A1.1(b)(1)(B). Paragraph 68 therefore should apply only a 2 level enhancement, and the adjusted offense level for this group as shown in Paragraph 72 is 39, not 40. This changes the total offense level in Paragraph 88 to be 39.

I reject Peteet's arguments that he should not be assessed levels for his

role in the offense or for obstruction of justice. The evidence showed that he directed the activities of the other Gary members of the WOS, including enlisting many WOS members in an attempted cover-up of the actual facts of the shooting. And the evidence shows that he obstructed justice.

Peteet again argues that he cannot be held liable under RICO because the jury found him not guilty of witness tampering as charged in Count 3. The jury was instructed that Count 3 related to the alleged tampering with witness Barry Rogers, and the jury found him not guilty on that count. But the jury was not asked to consider whether Peteet's actions regarding the other WOS members who were asked to sign the false statement or regarding the attempted bribe of the victim constituted witness tampering. I believe the evidence would have supported a witness tampering conviction beyond a reasonable doubt on either basis. Thus, the acquittal on witness tampering involving Barry Rogers does not mean that Peteet did not commit witness tampering, nor does it make the guidelines calculations incorrect.

125. The following language is substituted for Paragraph 125 in its entirety: "*Based upon a total offense level of 39 and a criminal history category of I, the guideline imprisonment range is 262 months to 327 months. The maximum of the guideline range exceeds the statutorily authorized maximum*

*sentence of 240 months on count one and 120 months on count two; accordingly a consecutive sentence on at least one count may be necessary to achieve the total punishment. USSG § 5G1.2(d).*"

The Sentence Imposed

Defendant requested a departure under § 5K2.10, arguing that the victim's wrongful conduct contributed significantly to provoking the shooting. There is no evidence to support this argument. The victim was unarmed. Inside the restaurant, before the shooting, he and a WOS member "tussled," but this was not any kind of serious fight. The evidence showed that Peteet walked up to the victim in the parking lot and threatened to kill him, and then pulled his firearm or firearms. The bullet entered the victim's lower back or buttocks, which corroborates his testimony that he was starting to walk away when shot. Even if he was involved in some kind of verbal disagreement with others in the parking lot, there is no evidence that he was a danger to anyone, and his conduct did not contribute in any way to Peteet's decision to shoot him. Additionally, I conclude that there are no other guideline departures that apply to Peteet.

When all the factors under § 3553(a) are considered, I conclude that the sentence of 276 months, which is in the bottom half of the advisory guidelines range, is sufficient but not greater than necessary to meet the sentencing

objectives set out in the statute.  Although Peteet has no prior convictions and is a lawyer, his conduct in this case was very serious.  He not only shot an unarmed man in the back, he then attempted to obstruct justice by asking others to provide false testimony and even attempting to bribe the victim.  So his crime is one of violence but also one of dishonesty.  And of course, he testified falsely at the trial.  His attorney argued that the loss of his law license was a significant punishment, but Peteet has shown by his conduct in this case that he should not be a lawyer.

The sentence imposed provides just punishment and reflects the seriousness of this crime, and will protect the public from other crimes of the defendant.  It also should be a deterrent to Peteet and others.  Any lower sentence would not be sufficient to meet those sentencing objectives.

Peteet's *Pro Se* Requests

Shortly after his conviction and remand to custody, Peteet began filing documents on his own behalf.  He sought access to the law library, complained about his lawyer, sought dismissal of the charges,  and filed supplemental objections to the Presentence Report.  He claimed that his rights under the Fifth and Sixth Amendments to the Constitution had been violated because notices from the court were sent to his attorney instead of directly to him at the jail.  He

asked to proceed as co-counsel and later asked that his counsel not be allowed to continue in the case. At the sentencing hearing he reported that counsel could continue to represent him at sentencing, but I also allowed him to make any legal arguments he wished. He mostly argued that he was innocent of the shooting and that he could not be guilty of a RICO conspiracy because he had not committed two predicate acts.

At the conclusion of the sentencing hearing, counsel indicated that he would file a notice of appeal as instructed by Peteet, but that he then wished to be relieved of any duty of further representation of Peteet. I stated that I would grant the request to withdraw once the notice of appeal had been filed, and I informed Peteet that if he wished to have counsel appointed for his appeal he would have to file appropriate motions with the Court of Appeals. I will order the Clerk of Court to add Peteet's current jail address to the docket sheet and to provide it to the Court of Appeals, since he will then be unrepresented. It is Peteet's obligation, of course, to keep the courts informed of his address if he continues to represent himself.

Accordingly,

**IT IS HEREBY ORDERED** that Peteet's *pro se* motions to proceed as co-counsel and address violations of his rights [##1372, 1392] are denied as

moot.

**IT IS HEREBY ORDERED** that the Clerk of Court shall docket this opinion separately in the public file, and shall also attach a copy of it to the Presentence Report that is filed under seal, so that it will accompany the report that is provided to the Bureau of Prisons or is otherwise lawfully disseminated. The Clerk of Court shall also attach a copy of this Opinion to the sealed Statement of Reasons.

**IT IS FURTHER ORDERED** the Clerk of Court shall add Peteet to the docket sheet as representing himself and serve this and all other notices on him at his current place of confinement.

**IT IS FURTHER ORDERED** that Peteet is reminded of his obligation to inform the Court of any change in address so long as he is representing himself.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 24th th day of April, 2013.